IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY E. BROWNING,<br><br>    Petitioner,<br><br>vs.<br><br>S. M. SALINAS,[1] Warden, Deuel Vocational Institution,<br><br>    Respondent. | No. 2:09-cv-00415-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Jerry E. Browning, a state prisoner proceeding *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Browning is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Deuel Vocational Institution.  Respondent has filed an answer, and Browning has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

  Browning is currently serving an indeterminate sentence of 29 years to life in prison following his 1983 conviction of first-degree murder with the use of a firearm.  In April 2008 the Board of Parole Hearings denied Browning parole.  Browning filed a petition for habeas corpus relief in the California Superior Court, Los Angeles County, which denied his petition in an unpublished, reasoned decision.[2]  Browning's subsequent petition for habeas corpus relief to the

---

  [1] S. M. Salinas, Warden, Deuel Vocational Institution, substituted for Steve Moore, Warden, Deuel Vocational Institution.  Fed. R. Civ. P. 25(d).

  [2] Docket No. 12-1, pp. 148-49.

California Court of Appeal was denied in an unpublished, reasoned decision,³ and the California Supreme Court summarily denied review without opinion or citation to authority on January 21, 2009.⁴  Browning timely filed his petition for relief in this Court on February 9, 2009.

## II.  GROUNDS RAISED/DEFENSES

In his petition Browning raises essentially a single ground:  that the decision of the Board of Parole Hearings was unsupported by the record and the Board violated his due process rights by failing to follow California laws, policies, procedures, and regulations.  Respondent does not assert any affirmative defense.⁵

## III.  STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."⁶  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the

---

³ Docket No. 12-3, p. 2.

⁴ Docket No. 12-3, p. 33

⁵ *See* Rules—Section 2254 Cases, Rule 5(b).

⁶ 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Supreme Court] as of the time of the relevant state-court decision."[7] The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[10] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[11]

In applying this standard, this Court reviews the last reasoned decision by the state court.[12] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[13]

---

[7] *Williams*, 529 U.S. at 412.

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[13] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV.  DISCUSSION

It is well-established by Supreme Court precedent that there is no constitutional right of a convicted person to be conditionally released on parole before expiration of a sentence.[14]  The Ninth Circuit has held, however, that a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment.[15]  It is well settled in this circuit that a decision of the parole board to deny a prisoner parole must be supported by some evidence in the record.[16]

Browning argues that there is no evidence in the record to support the determination that he poses a continuing risk of danger to society if released on parole.  Browning further argues that in reaching its decision, the Board did not follow applicable California laws, regulations, policies and procedures.  In denying this petition, the Los Angeles County Superior Court held:

> The record reflects that on the morning of July 2, 1981, petitioner was observed in the garage of a service station beating an Asian man, Kyung Yul Bae, with what appeared to be a piece of pipe.  Other witnesses saw the petitioner at the service station and at a liquor store at a nearby intersection earlier that morning when he took a sawed-off shotgun out of a tan Riviera. When the petitioner headed toward the service station, one of the witnesses called the police. The victim, Mr. Bae, died of his injuries and his daughter reported that $100 was missing from the cash register at the service station. At trial, the petitioner denied both robbing and beating Mr. Bae.
>
> The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on April 28, 2008.  The Petitioner was denied parole for three years.  The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if he is released.  The Board based its decision primarily on the

---

[14] *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).

[15] *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006).

[16] Id. at 1128-29 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)).

commitment offense, petitioner's lack of concrete parole plans, his extensive prior record, and the fact that he only recently commenced his programming.

The Court finds that there is some evidence to support the Board's finding that the commitment offense was carried out in a dispassionate and calculated manner. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(B). Petitioner brought a sawed-off shot gun and beat the victim to death with it. Additionally, the motive for the crime was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E). The robbery of the service station resulted in petitioner taking $100 from the victim who was robbed and killed.

As noted by the California Supreme Court, the commitment offense alone can constitute a sufficient basis for denial of parole and the Board can weigh the amount of violence involved heavily in making its decision. *In re Dannenberg* (2005) 34 Cal. 4th 1061, 1084. In this case, the Board also noted that the Petitioner had an extensive previous criminal history, both juvenile and adult. Cal. Code Regs., tit. 15, §2402, subd. (c)(2). In the hearing, petitioner had difficulty remembering most of his prior crimes.

Petitioner's general institutional record was commended, though he did have two 115s, the last one in April 1999 and four 128s, the last one in July 2002. Cal. Code Regs., tit. 15, §2402, subd. (b). The Board further noted that the District Attorney's Office had opposed the Petitioner's release. While this is not a factor on which the Board may rely to deny parole, such opposition may be properly considered. Penal Code § 3402.

The Board also noted several positive gains that the Petitioner has achieved while incarcerated. The Board noted that the Petitioner had programmed well, but had not attended AA, despite citing a problem with alcohol, nor had he completed his GED. Additionally, it noted that the programming was mostly recent. Additionally, his psychological report indicated that he was a moderate risk for future violence and did not quite express genuine remorse and acceptance of responsibility for the crimes. The Board concluded that despite some gains, the petitioner posed an unreasonable threat to public safety at the time of its hearing. Penal Code § 3041(b).[17]

On appeal, the California Court of Appeal rejected Browning's arguments, holding:

The petition for writ of habeas corpus has been read and considered.

---

[17] Docket No. 12-2, pp. 148-49.

The petition is denied for failure to state sufficient facts or to provide an adequate record demonstrating entitlement to the relief requested. There is "some evidence" to support the finding of the Board of Prison Terms that petitioner currently poses a risk to public safety if paroled, including the circumstances of the offense, petitioners most recent psychological reports, his prior criminal record and his institutional programming. (See *In re Lawrence* (2008) 44 Cal.4th 1181,1190-1191; *In re Shaputis* (2008) 44 Cal.4th 1241, 1260-1261; *In re Dannenberg* (2005) 34 Cal.4th 1061, 1071.)[18]

To the extent that Browning argues the Board did not follow California law in rendering its decision, he raises issues of the proper application of state law beyond the purview of this Court in a federal habeas proceeding. A fundamental principle of our system of dual federalism is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[19] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[20] It does not matter that the state supreme court's statement of the law was dicta if it is perfectly clear and unambiguous.[21] A determination of state law by a state

---

[18] Docket No. 12-3, p.2.

[19] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."); *see Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[20] *See Bradshaw*, 546 U.S. at 76–78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[21] *Id.* at 76.

intermediate appellate court is also binding in a federal habeas action.[22]  This is especially true where, as here, the highest court in the state has denied review of the lower court's decision.[23]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[24]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[25]  Browning's allegations of misapplications of state law, whether statutory or regulatory, do not present a federal constitutional issue cognizable by this Court in a federal habeas proceeding.

The California parole scheme provides for a review of the inmate's file, a personal interview by the Board, including an opportunity for the inmate to present evidence of suitability for parole, and a statement of the Board's reasons for denying parole.  This meets the requirements of due process,[26] a point Browning does not appear to dispute.  The Ninth Circuit has, however, indicated that although the commitment offense provides some evidence of unsuitability for parole, "[a] continued reliance in the future on an unchanging factor, the

---

[22] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[23] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[24] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[25] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[26] *See Greenholtz*, 442 U.S. at 15-16 (applying the standards set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972)).

circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the system and could result in a due process violation."[27]

In its decision, the California Court of Appeal applied the California Supreme Court decisions in *Lawrence*,[28] and its companion case, *Shaputis*.[29] In *Lawrence*, the California Supreme Court affirmed the lower court's order reversing the decision of the Governor to deny parole, holding:

> For the reasons set forth below, we conclude that because the core statutory determination entrusted to the Board and the Governor is whether the inmate poses a current threat to public safety, the standard of review properly is characterized as whether "some evidence" supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous. Moreover, with regard to the aggravated circumstances of a commitment offense, we conclude that to the extent our decisions in *Rosenkrantz* and *Dannenberg* have been read to imply that a particularly egregious commitment offense *always* will provide the requisite modicum of evidence supporting the Board's or the Governor's decision, this assumption is inconsistent with the statutory mandate that the Board and the Governor consider all relevant statutory factors when evaluating an inmate's suitability for parole, and inconsistent with the inmate's due process liberty interest in parole that we recognized in *Rosenkrantz*. (*Rosenkrantz, supra,* 29 Cal.4th at p. 664, 128 Cal.Rptr.2d 104, 59 P.3d 174.) In some cases, such as this one, in which evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct

---

[27] *Biggs v. Terhune*, 334 F.3d 910, 916-17 (9th Cir. 2003); *see Sass* (applying *Biggs*); *Irons v. Carey*, 505 F.3d 846, 853-54 (9th Cir. 2007) (same). This Court recognizes that validity of this principle, as a matter of federal constitutional law, is presently pending before an en banc panel of the Ninth Circuit in *Hayward v. Marshall*, 512 F.3d 536, *reh'g en banc granted*, 527 F.3d 797 (9th Cir. 2008). This Court has determined, however, that given this Court's decision, the decision in *Hayward* would have no impact on the outcome in this case. This Court is also not unmindful of the rule that Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed. *Carey v. Musladin,* 549 U.S. 70, 76-77 (2006); *Holley v. Yarborough*, 568 F.3d 1091, 1097 (9th Cir. 2009).

[28] *In re Lawrence*, 190 P.3d 535 (2008).

[29] *In re Shaputis*, 190 P.3d 573 (2008).

is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence" *inevitably* supporting the ultimate decision that the inmate remains a threat to public safety.[30]

In *Shaputis*, the California Supreme Court reversed the lower court's order reversing the decision of the Governor to deny parole, holding:

> Some evidence in the record supports the Governor's decision that petitioner remains dangerous. His decision stated that because the commitment offense (second degree murder) was intentional and premeditated, it was "especially aggravated," and "alone sufficient" to conclude that petitioner posed a current risk to public safety. The record supports the Governor's determination that the crime was especially aggravated *and,* importantly, that the aggravated nature of the offense indicates that petitioner poses a current risk to public safety. This is not a case, like *Lawrence, supra,* 44 Cal.4th 1181, ----, 82 Cal.Rptr.3d 169, 201-202, 190 P.3d 535, 563, in which the commitment offense was an isolated incident, committed while petitioner was subject to emotional stress that was unusual or unlikely to recur. (See, e.g. Regs., § 2402, subd. (d)(4) [the circumstance that the crime was committed during a period of significant stress in an inmate's life constitutes evidence to be considered in evaluating his or her suitability for parole].) Instead, the murder was the culmination of many years of petitioner's violent and brutalizing behavior toward the victim, his children, and his previous wife.
>
> The record establishes, moreover, that although petitioner has stated that his conduct was "wrong," and feels some remorse for the crime, he has failed to gain insight or understanding into either his violent conduct or his commission of the commitment offense. Evidence concerning the nature of the weapon, the location of ammunition found at the crime scene, and petitioner's statement that he had a "little fight" with his wife support the view that he killed his wife intentionally, but as the record also demonstrates, petitioner *still* claims the shooting was an *accident.* This claim, considered with evidence of petitioner's history of domestic abuse and recent psychological reports reflecting that his character remains unchanged and that he is unable to gain insight into his antisocial behavior despite years of therapy and rehabilitative "programming", all provide some evidence in support of the Governor's conclusion that petitioner remains dangerous and is unsuitable for parole.[31]

---

[30] *Lawrence*, 190 P.3d at 539 (emphasis in the original).

[31] *Shaputis*, 190 P.3d at 574-75 (emphasis in the original).

While there need not be a narrow Supreme Court holding precisely on point, this Court cannot say that the California Court of Appeal ignored the fundamental principles established by *Greenholtz*, the most relevant Supreme Court precedent on point.[32]  In the absence of explicit direction from the Supreme Court, this Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions.[33]  Even if this Court were to apply the *dicta* of the Ninth Circuit in *Biggs*, applied in *Sass* and *Irons*, Browning would not prevail.  *Lawrence* and *Shaputis* essentially adopted the *dicta* in *Biggs* as the law in California.  Because the *Hill* "some evidence" standard is a broad standard, a state court has even more latitude to reasonably determine that a prisoner has not satisfied that standard.[34]

This Court cannot say that the decision of the California Court of Appeal, following and applying the decisions of the California Supreme Court in *Lawrence* and *Shaputis*, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35]  Nor can this Court find that the state court unreasonably applied the correct legal principle within the scope of *Andrade-*

---

[32] *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007); *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009).

[33] *Musladin*, 549 U.S. at 74; *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009).

[34] *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

[35] 28 U.S.C. § 2254(d).

*Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Browning is not entitled to relief.

V.  ORDER

**IT IS HEREBY ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[36]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[37]

The Clerk of the Court is to enter judgment accordingly.

Dated:  April 21, 2010.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[36] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

[37] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.